## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GROUPCHATTER, LLC, | Case No. 8:18-cv-35 |
| Plaintiff, | |
| v. | **COMPLAINT, JURY DEMAND AND** |
| | **PLACE OF TRIAL DESIGNATION** |
| AGILE SPORTS TECHNOLOGIES, INC., d/b/a HUDL, | |
| Defendant. | |

Plaintiff, GroupChatter, LLC, files this Complaint against Defendant, Agile Sports Technologies, Inc., d/b/a Hudl ("Defendant" or "Hudl"), for infringement of U.S. Patent Nos. 9,699,637; 9,615,239; 8,588,207; 9,014,659; and 9,294,888.

### THE PARTIES

1.      Plaintiff GroupChatter, LLC ("GroupChatter") is a Texas limited liability company with its headquarters and principal place of business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.      Defendant Agile Sports Technologies, Inc. d/b/a Hudl ("Hudl") is a Delaware corporation with its principal place of business in Nebraska.  Hudl may be served through its registered agent, National Corporate Research, Ltd., 5601 South 59th Street, Suite C, Lincoln, Nebraska 68516.

### JURISDICTION AND VENUE

3.      GroupChatter brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

1

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).  Defendant is headquartered in this judicial district, does business in this judicial district, has provided downloads of the Hudl group chat tool to users in this judicial district, committed acts of infringement in this judicial district, and has purposely transacted business in this judicial district involving the accused products.

## GROUPCHATTER PATENTS

5.      Hudl has infringed and continues to infringe U.S. Patent Nos. 8,588,207 (the "'207 Patent"); 9,014,659 (the "'659 Patent"), 9,615,239 (the "'239 Patent"); 9,699,637 (the "'637 Patent"); and 9,294,888 (the "'888 Patent") (collectively "the Asserted Patents").

6.      The '659, '207, '637, '239 and '888 Patents relate to methods, apparatuses, and systems for providing acknowledged, deterministic mass messaging over a two-way wireless network.

### GroupChatter '659, '207, '637, '239 and '888 Patents

7.      The GroupChatter Asserted '659, '207, '637, '239 and '888 Patents describe two-way communication systems and methods featuring acknowledged group messaging enabled within the claimed network architecture and addressing scheme.

8.      "Deterministic" group messaging refers to one of the advantages delivered by the inventions.  Using the claimed system offers the potential benefit of providing timely updates for and from endpoints within a group.  In operation, these endpoints (e.g., smartphones, pagers, utility meters, transponders, etc.) send responses to group messages and thereby provide data from which to determine the status of each endpoint.

9.      Broadly speaking, GroupChatter accuses Hudl of infringing the Asserted Patents by providing, deploying, monetizing, promoting, operating, testing, and using the Hudl ecosystem

(e.g., infrastructure and software) that allows users to conduct and participate, within a social network, in deterministic, acknowledged group messaging as recited in the Asserted Claims.

10.    The inventors, James Dabbs and Brian Claise, noted in the patent specification that certain communication networks, even those with endpoint devices capable of acknowledging group messages, failed to provide the valuable advantage of deterministic communication because they provided no way to maintain status of group members.  This left administrators lacking important data about the status recipients, response status from users, and other valuable state information concerning messages and message responses.

11.    To solve this problem and other shortcomings of prior two-way wireless messaging networks, the inventors conceived a novel combination for maintaining group management information and organization for use on a wireless network.  They describe in the Asserted Patents how to build and deploy the network architecture to use it and achieve these benefits.

12.    In the Asserted Claims of the '659, '207, '637, '239 and '888 Patents, endpoints are identified by information about the user or specific endpoint device, which may include names or network addresses(es), and by groups that particular recipient device belongs to.

13.    In addition to the two-way wireless architecture of the radio network, a client/server-based architecture is provided for communication between a network client and the two-way wireless network.

14.    FIG. 1 of the '207 Patent (reproduced below) depicts an exemplary architecture and high level aspects of an embodied network related to one or more claims:



FIG. 1

15.     As shown, exemplary structural elements for an embodied system include: (1) a network client 20; (2) a network switch or server 12 coupled to a receiver database 18; (3) a wireless network 14; and (4) a plurality of mobile receivers 16 (e.g., smartphones, meters, etc.).

16.     Through client/server interactions, a user is provided up-to-date group information that may include address information, status information pertaining to a message or response, overall group detail and status, or even specific information about endpoints within a group.

17.     In operation, Hudl stores recipient identifiers, one or more group identifiers for each recipient endpoint, and group membership data that identifies which recipients belong to specific groups.  An endpoint may belong to multiple groups and thus may be associated with multiple group identifiers.

18.     In Hudl, a group message is initiated via a network client and wirelessly transmitted to endpoint devices located anywhere within the range of the wireless network infrastructure.

19.     Hudl endpoints (recipient devices) are configured to receive a group messages and respond with status information, alphanumeric text entries, or other information based upon the

4

message and endpoint device status.

20.    Efficient group management and maintenance is an advantage of the claimed system and is demonstrated in operation of the claimed invention by reference to and communication with selected endpoints and groups of endpoints that each have a subset of the group information data stored locally.

21.    As background, the inventors conceived the subject matter of the patents-in-suit in part to address issues in communication networks of the day.  For example, some radios and associated wireless networks used by emergency responders were unable to handle the heavy network traffic that circumstances unfortunately required.  '207 Patent, col. 1; lines 40-49.  The "Background of the Invention" states:

> "during the events of Sep. 11, 2001, radio channels became oversaturated, and interoperability problems among jurisdictions and agencies persisted throughout the entire response process. Otherwise compatible portable radios were preprogrammed in a manner that precluded interoperability. Cellular telephone systems and even the public switched telephone network (PSTN) became congested and unusable."

22.    Older pager systems proved more reliable than cell phone networks during the September 11 tragedy.  But while pager-based systems had the potential to be relatively robust in emergency circumstances, such systems of the time were unable to efficiently process group messages (i.e., messages to groups of recipients) and track the individual responses to know which members of the group had responded.  The Background of the Invention section of the specification states:

> "none of these systems provide a network interface sufficient to support acknowledged group messaging. Requiring that the message originator individually alert each recipient adds considerable setup delay when alerting large groups."

23.    Accordingly, the inventors conceived the invention(s) to address these problems. The result was a novel system that efficiently used limited bandwidth and network resources to

effectively communicate with selected endpoints groups whose membership may be dynamically created and adjusted. Even in these conditions, the inventors sought to provide effective group management and improved network efficiency, operability, and reliability (based on the challenges of the time).

24.     The Asserted '659, '207, '637, '239, and '888 Patents require, among other things, a specific network architecture that may include at least: wireless network (e.g., a cellular network) infrastructure (e.g., base stations, backhaul, transmitters, receivers, antennae, Hudl servers, and central switch), and multiple network clients (e.g., smartphones running Hudl and equipped with two-way wireless communication modules for communicating on the wireless network).

25.     The subject matter of the system and method claims asserted against Defendant are tied to the structural deployment described in the Asserted Patents and address shortcomings in group management and communication that the inventors experienced before their invention.

26.     In operation, the Asserted Claims detail how a message originator, who may lack knowledge of specific details regarding a particular endpoint group, is provided group information to the network client. Such information may include membership information for each group, the number of recipient endpoints sharing a group identifier, or an identifier shared by certain recipient endpoints within a group.

27.     The claims recite a specific method for providing this information. The Asserted Claims of the '659, '207, '637, '239 and '888 Patents describe and recite the source of group and recipient endpoint information, how and when it is transmitted to a network client, and how it may be displayed and updated at the network client.

28.     In an example scenario where an incident commander is seeking assistance over a pager network, a notification feature can provide the commander (i.e., the message originator)

details about the number, identities, and statuses of group members. Using the invention for this feature, the commander is able to determine based upon the group messaging system information, a status of group members. Without this feature, an incident commander may have insufficient context to know whether enough personnel were being summoned, or whether key individuals had been mobilized.[1]

29.     By using the claimed addressing scheme described in the Asserted Patents, Defendant and other infringers are able to communicate to ad hoc or dynamically organized groups of users.

30.     Additional meaningful claim elements in the Asserted Claims include: (1) providing recipient identifier and group identifier information for each group to which a recipient is a member; and (2) storing acknowledgement data for each group member that lists them and indicates their response (e.g., "…*storing acknowledgement data in the memory device for each of the group members, the acknowledgement data comprising a listing of each of the group members and an indication of response for each of the group members*"). In previous systems, referring again to the incident commander's scenario for example, after a volunteer group was alerted by pager, the incident commander would not know who was going to respond until personnel began to arrive on scene. In contrast, with the claimed "deterministic" group messaging systems, incident commanders (or group administrators) are updated in response to the group messages dispatched. Responses are linked to endpoint recipients within the group context, an advantage and novel advancement achieved by the inventive group management scheme. In this way, the inventive systems and methods provide a valuable concrete result: deterministic status information provided to a network client device for groups of endpoint recipients across a two-way wireless

---

[1] *See* '207 Patent: col. 2, lines 22-26.

communication network.

31.     Accordingly, the Asserted Claims of the '659, '207, '637, '239 and '888 Patents are directed to a specific two-way wireless architecture appended with a group management and maintenance system based upon group and recipient identifiers for identifying with and selectively communicating with endpoint recipients across the network.

32.     Acknowledged group messaging may be performed in ways and across architectures that differ from the claimed subject matter.  While the advantages of the inventions likely will not be achieved, two-way messaging with selective groups of endpoints and management of such groups may be performed using other methods such as frequency division across the geographical region or focused transmission, encryption, or having multiple radios in the network infrastructure for communicating with predetermined groups based upon location.

33.     The Asserted Claims provide structure and limit the invention to particular and novel ways of deterministically messaging selective groups of recipients on a two-way wireless communication network.   These structural limitations describing architecture, integrated computer-based operations necessary to practice the patent claims (e.g., database tables, communication at network client with server/switch), wireless network protocol capable of communicating with groups, and endpoints that can receive and interpret those signals provide meaningful structural limitations that one of skill in the art would recognize as distinctions between network types.

34.     The operations, function, and results of the subject matter of the Accused System cannot be carried out and achieved by a human or generic computer or by using a generic two-way wireless radio network.

35.     Generic computer networks or wireless two-way radio networks do not perform

"group communication and response tracking" or "group management and maintenance" as those general concepts are claimed in the Asserted Patents.

36.     Some of the major advantages of the claimed systems and advances over the prior art are discussed in the specification (centralized management and administration of groups and recipients' relationships with groups, effectively communicating with multiple endpoints in groups, and tracking status across a network by group).  One skilled in the art at the time of the inventions would further recognize additional advantages including management of groups across a dispersed area or networks, tracking status information of recipient groups including whether individual group members have receiver or read a group message, and monitoring this information at a dispatch center.

37.     By the novel combination of its two-way wireless network architecture, group management and maintenance scheme, and deterministic messaging functionality, the Asserted Patents present a specific, inventive solution to the problem the inventors recognized with messaging networks at the time of their invention.

## HUDL

38.     Defendant provides the Hudl ecosystem, which enables users to communicate seamlessly across mobile phones, tablets, and computers regardless of each device's operating system.



39.     Hudl users download and install the Hudl software and may install a copy of the software on each of their devices.

40.     The Hudl ecosystem permits the users to communicate with other users.

41.     Hudl users can exchange messages, share videos, chat, group share, and receive notifications.

42.     To communicate using the Hudl ecosystem, Hudl users must use the Hudl software (i.e., apps) provided by Defendant.

43.     Hudl software is available at www.hudl.com (via web browser) and from app stores operated by Apple and Google.

44.     The Hudl software is available for various hardware including Apple devices (e.g., iPods, iPhones, and iPads) and Android-based devices (e.g., cell phones, tablets, and computers).

45.     According to Defendant, Hudl is currently available for the following systems:





46.    According to Hudl, iPhones and iPads are supported devices.

47.    According to Hudl, Android smartphones are supported devices.

48.    Using Defendant's software, these devices operate over cellular connections (e.g., 3G, 4G, LTE) or Wi-Fi connections to provide "cross-platform" communication among Hudl users.

49.    <u>Viewing Posted Content</u> – Using Hudl, a user is able to post content (e.g. videos, etc.) to an ongoing thread between another Hudl user or group of Hudl users.  Users in that thread may then view the posted content, respond to that content, and post their own content.

50.    <u>Communicating and Sending Messages</u> – Hudl users communicate with friends, teammates, fellow users, and group members in a variety of formats including through chats, message feedback, videos and photos.



51.    Hudl provides users the ability to connect with specific sets of users (e.g., teammates) to share updates, photos, messages and videos.

52.    <u>Groups</u> – Hudl permits users to communicate with (e.g., broadcast a group message

to) defined groups of users (e.g., teammates).

53.    Hudl Group Conversations allow users to communicate with fellow group members by sending, for example, messages, photos, or videos.

54.    <u>Acknowledging, responding to, and Rating Content</u> – Defendant enables users to view and rate new personal content provided by other users.  For example, a user may provide feedback to posted content by clicking the symbols that are next to the posted content.



55.    <u>Notifications</u> – Hudl provides various notifications to users regarding posts, responses, and acknowledgments.

56.    Hudl users receive notifications from their browser or app (i.e., a network client) to alert them of any relevant posts, messages and other content.  Hudl also provides read status for group and individual messages.

57.    Hudl realizes substantial value from the group messaging feature of the Hudl application and platform.

58.    Using Hudl to send a group message, a user can see who has seen her message and the time it was viewed:

**How do I know if my team is reading my messages?**

The most recent message in every conversation has a "Seen by" indicator that counts how many recipients have read your message.

Gold and Platinum subscribers have access to more detail in "Message Info". This will tell you who viewed a message and who received a notification but didn't open the message yet.

Learn how to check read receipts.



59.    Hudl infringes the GroupChatter Asserted Patents by making, using, monetizing, providing, promoting, deploying, and testing the Hudl ecosystem including Hudl infrastructure (e.g., server-based systems), and the various Hudl apps that users install on phones, tablets, and computers.  These infringing Hudl components and Hudl systems are the "Accused Systems."

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 8,588,207

60.    GroupChatter incorporates paragraphs 1 through 59 herein by reference.

61.    GroupChatter is the owner, by assignment, of U.S. Patent No. 8,588,207 (the "'207 Patent"), titled "METHOD AND APPARATUS FOR EFFICIENT AND DETERMINISTIC GROUP ALERTING."

62.    A true and correct copy of the '207 Patent is attached as Exhibit A.

63.    As the owner of the '207 Patent, GroupChatter holds all substantial rights in and under the '207 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue,

and recover damages for past and future infringement.

64.     The United States Patent Office granted the '207 Patent on November 19, 2013.

65.     The '207 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

66.     Defendant practices one or more claims of the '207 Patent, including at least claims 1, 2, 3, 5, 6, 8, 9, 11, and 12, by making, using, monetizing, testing, offering for sale, selling, and/or importing the Accused Systems for operation as a deterministic group messaging system used by Hudl users to exchange group messages over wireless networks (e.g., cellular, Wi-Fi, WiMAX, wireless broadband).

67.     Hudl has directly infringed and continue to infringe the '207 Patent by deploying, testing, using, providing, monetizing, and operating the Accused Systems to provide acknowledged group messaging to users and perform acknowledged group messaging.

68.     The Accused Systems provide users the ability to start group conversations and exchange messages among members of a group using mobile devices operating on wireless networks.

69.     IDs are part of a user's profile.  Defendant uses this information to help Hudl users find other Hudl users and to organize a user's information within the Hudl infrastructure (e.g., on Hudl servers).

70.     From within Hudl, a user can create a group to message.

## Who can I message?

Any coach or player can start private conversations with other individuals, or communicate with an entire group on the same Hudl roster. Every message in a group conversation is visible to the whole group. You can also have a private 1-on-1 conversation with a single individual.

Get started by messaging a group or individual below


**Athletes**
Ice Rays - CI


**Coaches**
Ice Rays - CI


**Other teams**
Message your other teams

Learn more about messaging

71.     Group information is stored on Hudl servers.

72.     In the context of the Asserted Claims, a Hudl app may act as network client to transmit to the Hudl infrastructure (e.g., a Hudl server) a request for wireless transmission of a group message.

73.     Hudl transmits group information related to the group address, group membership, and/or recipient identifying information via the Hudl infrastructure to a network client (e.g., Hudl app).

74.     The Accused Systems broadcast group messages to members via wireless networks such as cellular or Wi-Fi networks on which network client devices are operating.

75.     The Accused Systems receive acknowledgements from group members via the user's wireless network (e.g., Wi-Fi network or cellular network). For example, a message-initiating user will see when her message is delivered and when the recipient user sees it.



76.     Hudl tracks and updates a message's status "Seen" when appropriate.  Users may respond to group messages with messages, or read indicators sent from their mobile device.

77.     When membership changes in a Hudl group, membership data on the Hudl server system is updated along with affected users' mobile devices.

78.     Hudl is on notice that the Hudl applications are especially made or especially adapted for use in infringing the '207 Patent and how these applications infringe the asserted claims of the '207 Patent.

79.     Defendant's infringing conduct described in this Count has damaged GroupChatter. Hudl is liable to GroupChatter in an amount that adequately compensates it for infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT 2
### INFRINGEMENT OF U.S. PATENT NO. 9,014,659

80.     GroupChatter incorporates paragraphs 1 through 79 herein by reference.

16

81.    GroupChatter is the owner, by assignment, of U.S. Patent No. 9,014,659 (the "'659 Patent"), titled "METHOD AND APPARATUS FOR EFFICIENT AND DETERMINISTIC GROUP ALERTING."

82.    A true and correct copy of the '659 Patent is attached as Exhibit B.

83.    As the owner of the '659 Patent, GroupChatter holds all substantial rights in and under the '659 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

84.    The United States Patent Office granted the '659 Patent on April 21, 2015.

85.    The '659 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

86.    Hudl is practicing one or more claims of the '659 Patent, including at least claims 1, 2, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 16, and 17, by making, using, offering for sale, monetizing, selling, and/or importing the Accused Systems that provide a deterministic group messaging system to Hudl users who exchange group messages over wireless networks (e.g., cellular, Wi-Fi, WiMAX, or wireless broadband).

87.    Hudl has directly infringed and continues to infringe the '659 Patent by deploying, testing, using, monetizing, and operating the Accused Systems to provide acknowledged group messaging to users and perform acknowledged group messaging.

88.    The Accused Systems operate on computers, desktop computers, laptops, smartphones, tablets, and mobile devices and communicate using cellular and/or Wi-Fi networks. Such hardware having the Hudl apps installed are included in the definition of "Accused Systems."

89.    Accused Systems provide Hudl users the ability to start group conversations and exchange messages among members of a group via mobile devices operating on wireless networks.

90.    Hudl stores on its servers data relating to recipients, groups created by users, and group membership information.

91.    IDs are part of a user's profile.  Defendant uses this information to help Hudl users find other Hudl users and to organize a user's information internally on the Hudl servers.

92.    Hudl provides to mobile devices running Hudl app(s) group information such as group membership and recipient identifying data stored on the Hudl server infrastructure.

93.    A user selects the "New Group" button to create a group having a group identifier or "Group Name" and include members having recipient identifiers.

94.    Hudl transmits Group messages wirelessly to mobile devices corresponding to each recipient in the selected group.

95.    Mobile devices running a Hudl app or accessing the Hudl System via a web browser receive a group message and respond with acknowledgement of receipt, an alphanumeric text reply, and/or indication the group message has been received but not read by the user.

96.    Hudl stores acknowledgement data for each group member in memory.

97.    The Hudl "Seen" Status displays the "seen" status when other users have seen the user's messages and will display the "seen" status to other users when their messages have been seen.

98.    Hudl sends messages to the Accused System's network clients based on stored acknowledgement data.

99.    The Accused Hudl System broadcasts group messages to users via the users' wireless networks (e.g., cellular or Wi-Fi networks).

100.    The Accused Hudl System receives acknowledgement responses from group members via the wireless network used by a user's device.

101.    The Accused Hudl Systems provide acknowledgement responses indicating to the network client who has seen the group message.  For example, a message-initiating user will see when her message is delivered and when the recipient sees it.

102.    Users may respond to group messages in Hudl with messages, or read indicators sent from their mobile device.

103.    When membership changes in a Hudl group, Defendant updates membership data on the Hudl infrastructure (e.g., Hudl servers) and any user's device (e.g., phone or computer) that may be affected by the change.

104.    The Accused Hudl System provides acknowledged group messaging.

105.    Hudl servers store recipient identifiers for each group member, a group identifier corresponding to recipient groups, and information about membership of recipients in the recipient groups.

106.    Hudl stores group information on user devices having the Hudl application installed.

107.    When a group message is initiated, the Hudl client application within the Accused Systems causes wireless transmission of the group message to mobile devices corresponding to group recipients.  In turn, mobile devices receiving the group message transmit a response.

108.    In operation, the Hudl client application in the Accused Systems monitors group message information relayed by Hudl infrastructure (e.g., servers) for group message responses. The client application stores acknowledgement data and message status information for each group member.

109.    Hudl instructs and encourages end users of the Hudl Accused Systems to use the Hudl group message features.

110.    Hudl is on notice of the Asserted Patents and the conduct by Hudl and its end users and customers that infringes them.

111.    Hudl is on notice that the Hudl applications are especially made or especially adapted for use in infringing the '659 Patent and how these applications infringe the asserted claims of the '659 Patent.

112.    Hudl has detailed knowledge about its specific conduct that GroupChatter contends infringes the '659 Patent.

113.    As a result of Hudl's infringing conduct described in this Count, GroupChatter has been damaged.  Defendant is liable to GroupChatter in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT 3**
**INFRINGEMENT OF U.S. PATENT NO. 9,294,888**

114.    GroupChatter incorporates paragraphs 1 through 113 herein by reference.

115.    GroupChatter is the owner, by assignment, of U.S. Patent No. 9,294,888 (the "'888 Patent"), titled "METHOD AND APPARATUS FOR EFFICIENT AND DETERMINISTIC GROUP ALERTING."

116.    A true and correct copy of the '888 Patent is attached as Exhibit C.

117.    As the owner of the '888 Patent, GroupChatter holds all substantial rights in and under the '888 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

118.    The United States Patent Office granted the '888 Patent on March 22, 2016.

119.    The '888 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

120.    Defendant is practicing one or more claims of the '888 Patent, including at least claims 1, 2, 3, 4, 5, 10, 11, 12, 13, and 14, by making, testing, importing, deploying, using, and/or monetizing the Hudl Accused System and subsystems that provide a deterministic group messaging system through which Hudl users exchange group messages over wireless networks (e.g., cellular, Wi-Fi, WiMAX, and wireless broadband).

121.    Hudl has directly infringed and continues to infringe the '888 Patent by deploying, testing, deploying, importing, monetizing, using, or operating the Accused Systems to provide acknowledged group messaging to users and perform acknowledged group messaging.

122.    Accused System components (e.g., Hudl apps) operate on desktop computers, smartphones, laptops, tablets, and mobile devices that communicate using cellular and/or Wi-Fi networks.

123.    The Accused System provides users the ability to start group conversations and exchange messages among members of a group via mobile devices operating on wireless networks.

124.    Hudl stores on Hudl infrastructure (e.g., servers) data relating to recipients, groups created by users, and group membership information.

125.    IDs are part of a user's profile.  Defendant provides this information to help users find other available Hudl users.  Hudl collects and organizes user information internally on the Hudl servers.

126.    Hudl provides group information (e.g., group membership and recipient identifying data stored on the Hudl servers) to mobile devices running the Hudl client application within the Accused Systems.

127.    A user can create a group having a group identifier and include members having recipient identifiers.

128.    Hudl wirelessly transmits group messages to mobile devices corresponding to each recipient in the selected group.

129.    Mobile devices running a Hudl client application receive a group message and respond with acknowledgement of receipt, an alphanumeric text reply, and/or indication the group message has been received but not read by the user.

130.    Hudl stores acknowledgement data (e.g., confirmation of receipt, a read receipt, or indication a reply was sent) in memory.

131.    Hudl sends messages to client applications within the Accused Systems based on stored acknowledgement data.

132.    The Accused System broadcasts group messages to members via wireless networks (e.g., cellular or Wi-Fi networks) on which network client devices are operating.

133.    The Accused Systems receive acknowledgement responses from group members via the wireless network being used by the respective Hudl user's device.

134.    For example, a message-initiating user will see when her message is delivered and when the recipient user sees it.

135.    Users send personal messages using the Accused Systems.

136.    Hudl provides acknowledgement responses indicating to the network client who has seen the group message and who among group members has not.

137.    Users may respond to group messages in Hudl with messages, or read indicators sent from their mobile device.

138.    When membership changes in a Hudl group, the Accused Systems update membership data on the Hudl server systems along with affected users' mobile devices.

139.    Hudl provides acknowledged group messaging.

140.    Hudl servers store recipient identifiers for each group member, a group identifier corresponding to recipient groups, and information about membership of recipients in the recipient groups.

141.    Hudl stores group information on a user's mobile device(s).

142.    When a group message is initiated, a user's client application within the Accused System causes wireless transmission of a group message to mobile devices corresponding to group recipients.  Mobile devices receiving the group message transmit a response.

143.    In operation, a Hudl client application monitors group message information relayed by Hudl servers for group message responses and stores acknowledgement data comprising an indication that the group message was received, a group message was read, or a reply was sent by the recipient.

144.    Hudl encourages its users and customers to use the messaging features of Hudl.com and the Hudl apps.

145.    Hudl is on notice of GroupChatter's '888 Patent and the conduct by Hudl and its end users that GroupChatter alleges infringes the asserted claims of the '888 Patent.

146.    Hudl is on notice that the Hudl applications are especially made or especially adapted for use in infringing the '888 Patent and how these applications infringe the asserted claims of the '888 Patent.

147.    GroupChatter has been damaged as a result of Hudl's infringing conduct.  Hudl is liable to GroupChatter in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT 4**
**INFRINGEMENT OF U.S. PATENT NO. 9,615,239**

148.    GroupChatter incorporates paragraphs 1 through 147 herein by reference.

149.    GroupChatter is the owner, by assignment, of U.S. Patent No. 9,615,239 (the "'239 Patent"), titled "METHOD AND APPARATUS FOR EFFICIENT AND DETERMINISTIC GROUP ALERTING."

150.    A true and correct copy of the '239 Patent is attached as Exhibit D.

151.    As the owner of the '239 Patent, GroupChatter holds all substantial rights in and under the '239 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

152.    The United States Patent Office granted the '239 Patent on April 4, 2017.

153.    The '239 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

154.    Defendant are practicing one or more claims of the '239 Patent, including at least claims 1, 2 and 5, by making, testing, importing, deploying, using, and/or monetizing the Hudl Accused System and subsystems that provide a deterministic group messaging system through which Hudl users exchange group messages over wireless networks.

155.    Hudl has directly infringed and continues to infringe the '239 Patent by deploying, testing, deploying, importing, monetizing, using, or operating the Accused Systems to provide acknowledged group messaging to users and perform acknowledged group messaging.

156.    Accused System components (e.g., Hudl apps) operate on desktop computers, smartphones, laptops, tablets, and mobile devices that communicate using cellular and/or Wi-Fi networks.

157.    The Accused System provides users the ability to start group conversations and

exchange messages among members of a group via mobile devices operating on wireless networks.

158.    Hudl allows users to communicate with a group of recipients over a wireless network.

## How can I use these tools?

Hudl's messaging tools enable you to have conversations with individual athletes and coaches, custom groups or the whole team. Below are a few examples:

- Send reminders about practice times.

- Discuss game strategy with coaches.

- Request feedback from the team.

- Share links to training resources.

## Who can I message?

Any coach or player can start private conversations with other individuals, or communicate with an entire group on the same Hudl roster. Every message in a group conversation is visible to the whole group. You can also have a private 1-on-1 conversation with a single individual.

https://www.hudl.com/support/v3/team-management/messaging/messaging-faq

159.    Hudl stores data comprising recipient identifiers associated with group addresses.



Group identifiers

Recipient identifiers corresponding to "Athletes" group

https://www.hudl.com/support/classic/team-management/athletes/edit-groups

160.    A user can send a message to a group of recipients via a web interface and the messages are then wirelessly transmitted to the recipients' devices.



https://www.hudl.com/support/classic/team-management/messaging/send-messages

161.    Hudl servers transmit group information to the network client.    The group information includes a count of group recipients and group identifiers.



Group identifiers

Recipient identifiers corresponding
to "Athletes" group

https://www.hudl.com/support/classic/team-management/athletes/edit-groups

162.    Hudl broadcasts the message wireless to members of the group address.



https://www.hudl.com/support/classic/team-management/messaging/send-messages

163.    The message specifies actions to be taken by each recipient (e.g. install) that each
recipient of the group needs to watch.

③ Click **Add recipients…** and check the box next to any group or specific athlete who should receive the install.



https://www.hudl.com/support/classic/playbook-practice-scripts/create-playbook-practice-scripts/share-plays-team

164.    Acknowledgement responses are received from devices in response to a group message via the wireless network.  The responses contain recipient identifiers and indications that the group message was successfully received.

## How do I know if my team is reading my messages?

The most recent message in every conversation has a "Seen by" indicator that counts how many recipients have read your message.

Gold and Platinum subscribers have access to more detail in "Message Info". This will tell you who viewed a message and who received a notification but didn't open the message yet.

https://www.hudl.com/support/v3/team-management/messaging/messaging-faq

165.    The sender of a group message is provided with the acknowledgement responses.



https://www.hudl.com/support/v3/team-management/messaging/check-read-receipts#computer

166.    Acknowledgment responses contain device identifiers, allowing a determination of which devices did not receive the message sent to the group.

## How do I know if my team is reading my messages?

The most recent message in every conversation has a "Seen by" indicator that counts how many recipients have read your message.

Gold and Platinum subscribers have access to more detail in "Message Info". This will tell you who viewed a message and who received a notification but didn't open the message yet.

https://www.hudl.com/support/v3/team-management/messaging/messaging-faq

167.    Hudl provides message alert status for each of the recipients.

168.    Hudl provides acknowledged group messaging.

169.    Hudl servers store recipient identifiers for each group member, a group identifier corresponding to recipient groups, and information about membership of recipients in the recipient groups.

170.    Hudl stores group information on a user's mobile device(s).

171.    When a group message is initiated, a user's client application within the Accused System causes wireless transmission of a group message to mobile devices corresponding to group recipients.  Mobile devices receiving the group message transmit a response.

172.    In operation, a Hudl client application monitors group message information relayed by Hudl servers for group message responses and stores acknowledgement data comprising an indication that the group message was received, a group message was read, or a reply was sent by the recipient.

173.    Hudl encourages its users and customers to use the messaging features of hudl.com and the Hudl apps.

174.    Hudl is on notice of GroupChatter's '239 Patent and the conduct by Hudl and its end users that GroupChatter alleges infringes the asserted claims of the '239 Patent.

175.    Hudl is on notice that the Hudl applications are especially made or especially adapted for use in infringing the '239 Patent and how these applications infringe the asserted claims of the '239 Patent.

176.    GroupChatter has been damaged as a result of Hudl's infringing conduct.  Hudl is liable to GroupChatter in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 9,699,637

177.    GroupChatter incorporates paragraphs 1 through 176 herein by reference.

178.    GroupChatter is the owner, by assignment, of U.S. Patent No. 9,699,637 (the "'637 Patent"), titled "METHOD AND APPARATUS FOR EFFICIENT AND DETERMINISTIC

GROUP ALERTING."

179.    A true and correct copy of the '637 Patent is attached as Exhibit E.

180.    As the owner of the '637 Patent, GroupChatter holds all substantial rights in and under the '637 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

181.    The United States Patent Office granted the '637 Patent on July 4, 2017.

182.    The '637 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

183.    Defendant are practicing one or more claims of the '637 Patent, including at least claims 1, 2, 3, 5, 7 and 8, by making, testing, importing, deploying, using, and/or monetizing the Hudl Accused System and subsystems that provide a deterministic group messaging system through which Hudl users exchange group messages over wireless networks.

184.    Hudl has directly infringed and continues to infringe the '637 Patent by deploying, testing, deploying, importing, monetizing, using, or operating the Accused Systems to provide acknowledged group messaging to users and perform acknowledged group messaging.

185.    Accused System components operate on desktop computers, smartphones, laptops, tablets, and mobile devices that communicate using cellular and/or Wi-Fi networks.

186.    The Accused System provides users the ability to start group conversations and exchange messages among members of a group via mobile devices operating on wireless networks.

187.    Hudl provides acknowledgment responses.

188.    Hudl displays the content of the message.

189.    Huld stores recipient identifiers (*e.g.* ID's) and group identifiers (*e.g.* Team Name/Coaches/Players etc.).



https://www.hudl.com/support/classic/team-management/athletes/edit-groups



https://www.hudl.com/support/classic/team-management/athletes/edit-groups

190.    A Hudl user can send a message to a group of recipients via a web interface.  These messages are then wirelessly transmitted to the recipients' devices.



https://www.hudl.com/support/classic/team-management/messaging/send-messages

191.    Huld servers transmit group information to the network client.

192.    Hudl broadcasts the message wirelessly to members of the group address.



https://www.hudl.com/support/classic/team-management/messaging/send-messages

193.    Hudl provides message alert status indicators indicating that the message was received or that the message has been sent but not received.  The responses contain recipient identifiers and indications that the group message was successfully received.



194.    Hudl displays a group name corresponding to the selected group identifier.



195.    Hudl stores on Hudl infrastructure (e.g., servers) data relating to recipients, groups created by users, and group membership information.

196.    Hudl collects and organizes user information internally on the Hudl servers.

197.    Hudl provides group information (e.g., group membership and recipient identifying data stored on the Hudl servers) to mobile devices running the Hudl client application within the Accused Systems.

198.    Hudl wirelessly transmits group messages to mobile devices corresponding to each recipient in the selected group.

199.    Mobile devices running a Hudl client application receive a group message and respond with acknowledgement of receipt, an alphanumeric text reply, and/or indication the group

message has been received but not read by the user.

200.    Hudl sends messages to client applications within the Accused Systems based on stored acknowledgement data.

201.    The Accused System broadcasts group messages to members via wireless networks on which network client devices are operating.

202.    For example, a message-initiating user will see when her message is delivered and when the recipient user sees it.

203.    Hudl provides acknowledgement responses indicating to the network client who has seen the group message and who among group members has not.

204.    Users may respond to group messages in Hudl with messages, or read indicators sent from their mobile device.

205.    Hudl provides acknowledged group messaging.

206.    Hudl servers store recipient identifiers for each group member, a group identifier corresponding to recipient groups, and information about membership of recipients in the recipient groups.

207.    When a group message is initiated, a user's client application within the Accused System causes wireless transmission of a group message to mobile devices corresponding to group recipients.  Mobile devices receiving the group message transmit a response.

208.    In operation, a Hudl client application monitors group message information relayed by Hudl servers for group message responses and stores acknowledgement data comprising an indication that the group message was received, a group message was read, or a reply was sent by the recipient.

209.    Hudl encourages its users and customers to use the Group Chat features of hudl.com

and the Hudl apps.

210.    Hudl is on notice of GroupChatter's '637 Patent and the conduct by Hudl and its end users that GroupChatter alleges infringes the asserted claims of the '637 Patent.

211.    Hudl is on notice that the Hudl applications are especially made or especially adapted for use in infringing the '637 Patent and how these applications infringe the asserted claims of the '637 Patent.

212.    GroupChatter has been damaged as a result of Hudl's infringing conduct.  Hudl is liable to GroupChatter in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### NOTICE

213.    GroupChatter does not currently distribute, sell, offer for sale, or make products embodying the asserted GroupChatter Patents.

214.    GroupChatter instructs its licensees to mark all licensed products sold, distributed, offered for sale, or made under license to the GroupChatter Patents and has undertaken reasonable efforts as required to comply with the notice requirements of 35 U.S.C. § 287.

### NOTICE OF REQUIREMENT OF LITIGATION HOLD

215.    Defendant is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy

form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

216.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees if Defendant's electronically stored information resides there.

217.    Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses.  To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic

deletion.

## JURY DEMAND AND PLACE OF TRIAL DESIGNATION

218.    GroupChatter hereby demands a trial by jury on all claims, issues and damages so triable and requests that such trial occur at Omaha, Nebraska.

## PRAYER FOR RELIEF

219.    GroupChatter prays for the following relief:

a.      That Defendant be summoned to appear and answer;

b.      That the Court enter an order declaring that Defendant has infringed the '888 Patent, the '207 Patent, '637 Patent, '239 Patent, and the '659 Patent.

c.      That the Court grant GroupChatter judgment against Defendant for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d.      That Defendant's infringement has been willful and award enhanced damages under 35 U.S.C. § 285; and

e.      That GroupChatter be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED this 31st day of January, 2018.

GROUPCHATTER, LLC, Plaintiff

Cabrach J. Connor (*pro hac vice pending*)
cab@connorkudlaclee.com
Jennifer Tatum Lee (*pro hac vice pending*)
jennifer@connorkudlaclee.com
CONNOR KUDLAC LEE PLLC
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.777.1254 Telephone
888.387.1134 Facsimile

and

By: s/Justin D. Eichmann
    Justin D. Eichmann - #22405
    Keith A. Harvat - #21008
    HOUGHTON BRADFORD WHITTED PC LLO
    6457 Frances Street, Suite 1800
    Omaha, Nebraska 68106
    (402) 344-4000 | (402) 930-1099 Fax
    jeichmann@houghtonbradford.com
    kharvat@houghtonbradford.com
    **ATTORNEYS FOR PLAINTIFF**